We are now going to move to appeals 24-1228 and 24-1229, United States v. Wesley White, Jr. And Mr. Broviac will move to you first. Thank you, Your Honors. May it please the Court, Counsel? Your Honor, my name is Zachary Broviac. I represent Appellant Wesley White. In this case, Appellant makes two points on appeal. The first one is that the District Court erred when it allowed the government to withdraw from certain portions of the guilty plea agreement. The portion itself had to do with the government making a sentence at the low end or making a recommendation at the low end of the guideline range. The error came in when the government relied on evidence that could be considered unreliable in order to support that decision, granting the government leave. It's that unreliable evidence that dovetails into the second point that's made, is that the District Court issued an unreasonable sentence in sentencing Mr. White to an aggregate sentence of 194 months with the Bureau of Prisons. So the unreliable evidence in this case were essentially emails that were presented at the sentencing hearing. Those emails were from a woman named Tamara Plummer and they were brought to court via a testimony through an agent through the Illinois State Police. So to step back for a second and just sort of go through a procedural background in this case, Mr. White pled guilty to two counts of felony possession of a firearm between sentencing and the, or excuse me, between his guilty plea and sentencing, Mr. White was additionally charged with murder in the first degree and armed criminal action in the City of St. Louis. You don't represent him in that case? I do not represent him in that case, Your Honor. I represent him through the CJA panel and the Seventh Circuit here and he's represented privately in the murder case. Obviously he's got a lengthy sentence with regard, sentences, consecutive sentences in this case. Yes, Your Honor. As I understand it, that Missouri State homicide charge, it remains pending and he's in bench warrant status with regard to it? That's correct, Your Honor. He's now doing his time with the Bureau of Prisons and there's a warrant pending in the City of St. Louis without a trial date at this moment. Thank you. Yeah. So. Mr. Borowiak. Yes, Your Honor. Why isn't his marijuana use enough by itself to support the District Court's decision to relieve the government from its sentencing obligation? I mean, it's true you point out that the government didn't cite marijuana use as a basis for the motion, but Judge Dugan did raise it on his own. And I gather there's no dispute that he, in fact, did use marijuana. Your Honor, there is no dispute that Mr. White did, in fact, use marijuana. I would point out that it was the basis, and I think you had mentioned this as well, the basis of the government's notice to withdraw was, in fact, the murder investigation and the sort of the marijuana and the issues that were raised via the emails were sort of stumbled upon during the course of the sentencing hearing itself. I think Judge Dugan used the phrase, low-hanging fruit. But I think when you get further from the marijuana, which I think was discussed that it was rarely used in order to revoke an individual or have such an impact as it did here in this case, I think that sort of gets to two things. It talks about sort of the substance behind the government's ability to withdraw from the guilty plea agreement, but it also goes further into the unreasonability of the sentence itself. I think the District Court mentioned that the marijuana use was something that was on sort of the lighter side of sort of violations, but the emails themselves, they were from Tamara Plummer, who was the victim in the homicide case, and there was no real opportunity to further investigate what was behind the emails. The evidence was sort of given to the court in a two-dimensional landscape. Counsel? I mean, I realize that no one had an opportunity to interview her, but she wasn't an anonymous source. She had a relationship with him, and she was in a position to know if and when he had missed a firearm. And she expressly said that the photos and video attached to her last email were taken within the prior 30 days. So what exactly precluded the judge from relying on her statement? Sure, Your Honor. I think one of the things that you mentioned there was that she did in fact know Mr. White, but one of the things that's discussed in the case law is the ability to cross-examine one of the witnesses when you're assessing the reliability or accuracy of the information. You know, the fact that there was a prior relationship there, I think, opens it up to what potentially could have the bias have been. That bias sort of makes it more difficult to understand when you're not just going from an email saying, hey, this was taken, to figuring out sort of the context behind it and the reasons why the pictures were taken. And Counsel, from your briefs, a lot of what I think you would cross on was focused on when those pictures were taken. Assuming that the government can withdraw from its agreement regarding its sentencing recommendation based on the marijuana use, that timing to me becomes much less important. And what is there that the district court here used at sentencing that in and of itself was unreliable, so wasn't related to the timing of when those pictures and the emails were taken? Sure, Judge. I would argue that the emails as a whole themselves were unreliable. Essentially, you couldn't really follow up with what was really any context behind that. I know I did talk about the timing with Agent Woodhill as far as there's no timestamp there, but I also asked him his opinion, because you have to remember, he's the one that's actually bringing this information to court as to when he thought these pictures would have been taken. And he just sort of goes with this blanket statement of, I have to assume they're old. And without any further corroboration or being able to speak with the person that generated those emails or that media, I think it makes it much more difficult to find the pictures and what they're sort of purporting, what the truth of the matter is that they're bringing out to be that much more unreliable. Would you like to reserve the remainder of your time? I would, Your Honor. Thank you. Thank you, Mr. Borowiak. Ms. Ruppert will now move to you for argument on behalf of the government. Thank you, Your Honors. Good morning. Laura Ruppert on behalf of the United States. May it please the court and counsel. The district court did not clearly err in finding that appellant violated federal law and breach of the plea agreement. After a lengthy evidentiary presentation in support of the government's notice to withdraw from its sentencing recommendation, this court declined our request to make a specific finding as to the commission of homicide and instead made two factual findings. First, that the appellant, Wesley White, possessed a firearm sometime in late October or early November of 2022, and second, that he possessed marijuana on December 28th of 2022. It cannot be said that these findings were erroneous, let alone clearly erroneous. Judge Rovner, as to your comments or questions to counsel for appellant, you're exactly right. The possession of marijuana on December 28th, 2022, was uncontroverted. There were a number of bond violations committed by appellant that were included in the pre-sentence investigation report, one of those being his possession and usage of marijuana on December 28th, 2022. At the sentencing hearing, Judge Dugan commenced it by asking Mr. White if everything in the of those things are being actively challenged by way of PSR objections. And Wesley White replied in the affirmative. And so, Mr. White acknowledged to the district court that he violated federal law on December 28th, 2022, which is a clear breach of the plea agreement. With respect to Mr. White's marijuana use, tell me this, when there is a conflict between federal and state law, as to the legality of marijuana use, does the defendant realize he may be committing a federal offense when using marijuana regardless of state law? I think that he is charged with having to know that he's violating federal law. And in fact, I know it is our common practice of our magistrate court judges, as well as United States Probation Office, that they specifically advise defendants while they're on pretrial release that usage of marijuana is in violation of federal law. And in fact, he would have had that knowledge because there were consistent bond violations that were submitted to the court with no judicial action taken. So Mr. White would have been charged with that knowledge that usage of marijuana was a violation of federal law by virtue of his repeated violations while on bond, including that final one that took place after he had pled guilty pursuant to the written plea agreement. With respect to the possession of a firearm, again, in late October of 2022, early November of 2022, I think it's important in assessing these emails what they weren't and what they were. Tamra Plummer did not email the Illinois State Police, the United States Probation Office, or the U.S. Attorney's Office simply making a statement, Wesley White possesses guns. She included photos, and those photos, and specifically the ones that were submitted to the U.S. Attorney's Office on November 12th of 2022, she specifically stated these were taken recently within the last 30 days. To back up for additional context, that statement is relevant and the court can rely upon that statement because there was this ongoing dialogue of trying to assess when the first photos sent to United States Probation and sent to the Illinois State Police, we were trying to assess when that photo was taken. And specifically, the photo that was included with the email to United States Probation Office on September 30th of 2022, Tamra Plummer specifically stated, Wesley White is threatening me with this firearm. He's threatening to kill me. And so she's saying that he's possessing this firearm and also using it to threaten her. When she sends this email November 12th of him in possession of a firearm and says these were taken recently within the last 30 days, the district court had every ability and every reliance on that as being reliable evidence that it was taken within the last 30 days. So these photos included with the emails showed that corroboration that it was clearly Wesley White in possession of a firearm. And then the timing and the additional statements that she made, in addition to the fact that she ended up dead on January 13th of 2023, just after being with Wesley White, not 45 minutes earlier. Again, all can go to the district court's conclusion that Wesley White possessed a firearm in that timeframe. So again, there was no error by the district court to rely upon that evidence. Certainly, again, it was not clear error. As it relates then to the substantive reasonableness of the sentence, the district court did what it was supposed to do, which was evaluate the 3553A factors and select a sentence that was sufficient but not greater than necessary. And a district court abuses its discretion on sentence when it resolves a manner, when it resolves an issue or a manner in a way that is fundamentally wrong, arbitrary, or fanciful. The court didn't do that here. The court analyzed the factors of 3553A and determined that the defendant, Wesley White, was a danger to the public. And it explained its conclusion, talked about the numerous prior convictions and adjudications where Wesley White was in possession, illegally, of firearms. A prior offense and one of the instant offenses showed him to be a trigger puller. One of his priors, he was shooting at a target affixed to an abandoned house in East St. Louis. One of the convictions in this case, he was at a firing range or a shooting range in St. Louis with a semi-automatic firearm with a 50-round drum magazine. And in both of those cases where he's firing at these targets, he's posting them on Facebook. He talked about the nature and circumstances of these instant offenses, that there was an idiotic, quote, idiotic attempt to obstruct justice, that he was trying to conceal firearms from law enforcement agents. And he eventually admitted that he got that firearm back and then he, quote, traded it on the streets. The district court commented on Wesley White's membership in a violent, notorious street gang in East St. Louis, JDS, which is short for John DeShields. So yes, the court referenced these photos of Wesley White that were provided by Tamara Plummer. But this was just a portion of an overall, an examination of the 3553A factors concluding that Wesley White was a dangerous person, could not be deterred from criminal conduct, future criminal conduct, and ultimately selecting a sentence of 194 months in the Bureau of  This was not an abuse of discretion. So unless there are any further questions from this court, we would respectfully ask this court affirm the sentence of the district court. Thank you, Ms. Ruppert. Thank you. We'll now move to Mr. Borowiak for a rebuttal argument. Yes, Your Honor. Please, the court. Your Honor, it was stated in the government's argument that as part of the corroboration in these emails is this idea that Ms. Plummer sends these pictures and then, you know, a person is found dead. I think it's important to point out, just here with the court right now, that the district court was very reluctant and decided not to make a finding as to whether or not Mr. White is guilty of the murder charge. I think what I'm trying to get to here with the court today is the fact that what's within these emails is considered unreliable. And it sort of taints the reasoning past the items that were from the PSR where I think the government just came up here and talked about gang violence and the such. But without sort of the consideration of what's contained within these emails, I think, you know, you can't get to the point where, you know, Mr. White is now serving a 194-month sentence. Essentially, the court went at length to talk about what was inside the emails and what conclusions that it drew from those, including it thinking that Mr. White had committed another felon in possession of a firearm case. But when we step back for a moment and we look at sort of whether or not the evidence that was presented in the emails contains a significant indica of reliability, I'm sorry, I was looking for the right phraseology there, courts have looked at sort of what creates this indica of reliability. And I think what it looks at is, is there forms of corroboration? Is there an opportunity to cross-examine? Is it supported by any other evidence? In my reply, I focused a lot on the Hankton case. And the reason I did that was because it's very similar to some of the other cases that are discussed. But one of the things that's in there is the government in that case is looking to basically reach a certain amount of drug weight. And there was testimony from individuals who were familiar with the acts of that case itself. This wasn't sort of an uncharged conduct matter. And then there were a series of other pleas and information from other individuals. I think the same is true sort of of the Smith case that I referenced in my brief right after where the court is talking about the number of people that had testified and the amount of information that was provided to the court for it to come to that conclusion, but also the opportunity for defense counsel to cross-examine and get further into those conversations. Thank you, Mr. Borowiak. Thank you, Ms. Ruppert. The case will be taken to our advisement. Thank you, Judge. Judge Rovner, with your permission, we'll take a brief break. Thank you very much.